JOHN L. BURRIS, Esq.  SBN 69888
DeWITT M. LACY, Esq. SBN 258789
**THE LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone:  (510) 839-5200
Facsimile:  (510) 839-3882
john.burris@johnburrislaw.com
dewitt.lacy@johnburrislaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA BIOCINI, et al.,<br><br>                  Plaintiffs,<br><br>    vs.<br>CITY OF OAKLAND, a municipal corporation; CARLOS NAVARRO, individually and in his capacity as an officer for the CITY OF OAKLAND Police Department; IRA ANDERSON, individually and in his capacity as an officer for the CITY OF OAKLAND Police Department; STEVEN STOUT, individually and in his capacity as an officer for the CITY OF OAKLAND Police Department; and DOES 1-25, inclusive, individually and in their official capacity as police officers for the CITY OF OAKLAND, jointly and severally,<br><br>                  Defendants. | CASE NO.: 3:14-cv-03315-TEH<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: January 11, 2015<br>Time: 10:00a.m.<br>Place: Courtroom 2, 4th Floor<br><br>Honorable Thelton E. Henderson, Judge |

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................................................ iii

Introduction ..................................................................................................................... 1

Statement of Facts ........................................................................................................... 2

Argument ......................................................................................................................... 5

A. Legal Standards ........................................................................................................... 5

1. Summary Judgment Standard ...................................................................................... 5

2. Leave to File an Amended Complaint .......................................................................... 6

B. The Defendant Officers Wrongfully Detained Decedent Jaramillo ............................ 6

1. The Initial Detention was Unlawful ............................................................................ 7

2. The Continued Detention was Also Unlawful ............................................................. 8

3. The Defendant Officer did not have Probable Cause to Arrest Decedent ................... 10

C. The Defendant Officers Are Not Entitled to Qualified Immunity .............................. 11

D. The Defendant Officers Acted with Racial Animus ................................................... 12

E. Plaintiffs Seek Leave to Amend the Complaint to Allege The Newly Discovered Claim that Decedent was Denied Reasonable Post-Arrest Care ........................................................ 13

F. Plaintiffs Properly Allege a *Monell* Claim ................................................................ 14

G. Plaintiffs Properly Allege Negligent Infliction of Emotional Distress ....................... 15

Conclusion ...................................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Statutes**

42 U.S.C. § 1983 ........................................................................................................... 1, 14

Federal Rule of Civil Procedure 56(e) ....................................................................... 5

Federal Rules of Civil Procedure Rule 15(a) .......................................................... 6

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................... 5

*Anderson v. Warner*, 451 F.3d 1063 (9th Cir. 2006) ............................................ 15

*Ashcroft v. al-Kidd*, 563 U.S. ——, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) ................ 11

*Brosseau v. Hagen*, 534 U.S. 194 (2004) ............................................................... 11

*Center for Bio–Ethical Reform, Inc. v. Los Angeles County Sheriff Dept.*, 533 F.3d 780 (9th Cir. 2008) ........................................................................................................ 9, 12

*City of Canton v. Harris*, 489 U.S. 378 (1989) ..................................................... 15

*City of Revere v. Massachusetts General Hospital*, 463 U.S. 239 (1983) ............... 14

*Deorle v. Rutherford*, 272 F.3d 1272  (9th Cir. 2001) .......................................... 10

*Dillon v. Legg*, 68 Cal.2d 728 (1968) ..................................................................... 16

*Espinosa v. City & County of San Francisco*, 598 F.3d 528 (9th Cir. 2010) ......... 5

*Florida v. Royer*, 460 U.S. 491 (1983) .................................................................... 8

*Freeman v. Arpaio*, 125 F.3d 723, 735 (9th Cir. 1997) ........................................ 5

*Gallegos v. City of Los Angeles*, 308 F.3d 987 (9th Cir. 2002) ............................ 8

*Haynie v. County of Los Angeles*, 339 F.3d 1071 (9th Cir. 2003) ........................ 9

*Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County*, 542 U.S. 177 (2004) ............... 8

*Huggins v. Longs Drug Stores Calif., Inc.*, 6 Cal.4th 124 (1993) ......................... 16

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) ............................... 5

*Keenan v. Allan*, 91 F.3d 1275 (9th Cir. 1996) ..................................................... 5

*Knapps v. City of Oakland*, 647 F.Supp.2d 1129 (N.D. Cal. 2009) ..................... 13

*Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522 (9th Cir. 2008) ................. 6

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)................................................................15

*Long v. County of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006)........................................................15

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)........................................................................6, 16

*Marlowe v. Pinal County*, 2008 WL 4264724 (D. Ariz. 2008)........................................................12

*Martin v. Cal. Dept. of Veterans Affairs*, 560 F.3d 1042 (9th Cir. 2009)........................................16

*Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..............................5

*Meredith v. Erath*, 342 F.3d 1057 (9h Cir. 2003)........................................................................10

*Mincey v. Arizona*, 437 U.S. 385 (1978)........................................................................................9

*Monell v. Department of Social Services*, 436 U.S. 658 (1978)........................................................14

*Owens v. Kaiser Foundation Health Plan, Inc.,* 244 F.3d 708 (9th Cir. 2001)..............................14

*Payton v. New York*, 445 U.S. 573 (1980)........................................................................................9

*Pearson v. Callahan*, 555 U.S. 223 (2009)....................................................................................11

*Robinson v. City of San Diego*, 954 F.Supp.2d 1010 (2013)............................................................7

*Saucier v. Katz*, 533 U.S. 194 (2001)............................................................................................11

*Tatum v. City and County of San Francisco*, 441 F.3d 1090 (9th Cir. 2006)..................................13

*Terry v. Ohio*, 392 U.S. 1 (1968)........................................................................................7, 8, 9, 12

*Thing v. La Chusa*, 48 Cal.3d  644 (1989)....................................................................................16

*Tolan v. Cotton*, —— U.S. ——, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014)..................................11

*Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011)................................................................11

*United States v. Crapser*, 472 F.3d 1141 (9th Cir. 2007)................................................................7

*United States v. Miles*, 247 F.3d 1009 (9th Cir. 2001)....................................................................8

*United States v. Ricardo D.*, 912 F.2d 337 (9th Cir. 1990)............................................................8

*United States v. Sharpe*, 470 U.S. 675 (1985)................................................................................9

*United States v. Torres–Sanchez*, 83 F.3d 1123 (9th Cir. 1996)....................................................10

*Ward v. City of San Jose*, 967 F.2d 280 (9th Cir. 1992)..................................................................1

*Washington v. Lambert*, 98 F.3d 1181 (9th Cir. 1996)..............................................................8, 12

*Wood v. Moss*, —— U.S. ——, 134 S.Ct. 2056, 188 L.Ed.2d 1039 (2014)..................................11

*Wooden v. Raveling*, 61 Cal.App.4th 1035 (1998)........................................................................16

**California Statutes**

Civil Code § 51(b) ........................................................................................................12

Civil Code § 51.7 .........................................................................................................12

Code of Civil Procedure § 377.34.................................................................................15

Welfare and Institutions Code § 5150 ..........................................................................10

# **INTRODUCTION**

This case arises out of the tragic unlawful detention, arrest, assault and wrongful death of Decedent Hernan Jaramillo at the hands of Defendant City of Oakland Police Officers Carlos Navarro, Ira Anderson, and Steven Stout. On July 9, 2013, Plaintiff Ana Biocini heard loud noises coming from her Decedent Jaramillo's room and misapprehending the noises to be that of an assailant attacking her brother called 911. The Defendant Officers responding more to descriptions Plaintiff provided in her 911 call than to the objective factors they observed for themselves, forced decedent out of his room, handcuffed and dragged him out of the home, and forced him to get into a patrol car. The Defendant Officers did all of this knowing that decedent was Plaintiff Biocini's brother—the victim of the 911 call not the suspected assailant. In attempting to force decedent into the patrol car, the Defendant Officers beat decedent and pinned him on the ground with their weight on top of him as he laid prone and begging them to get off him until he lost consciousness and ultimately died—all while Plaintiff and horrified neighbors watched the assault. Recognizing that material fact disputes preclude summary judgment as to Plaintiffs' excessive force, California Civil Code section 52.1 and Assault and Battery claims,[1] Defendants move for summary adjudication as to Plaintiffs' remaining causes of action. However, material fact questions preclude summary judgment as to the majority of Plaintiffs' remaining claims as well.[2] The misapprehension in circumstances for the 911 call was obvious. There was no need for the officers to detain decedent inside the home based on what they observed. Even if the Defendant Officers were justified in removing decedent from his home, forcing him into the patrol car was unreasonable because it is undisputed that at this point the Defendant Officers knew decedent was the subject victim of the 911 call not the intruder/assailant.

Plaintiffs' Opposition to Defendants' Motion for Summary Judgment is based on the arguments made below, on the Declaration of DeWitt M. Lacy (hereinafter the "Lacy Declaration"),

---

[1] The material fact dispute is more entrenched than Defendants' suggest, as several witnesses observed the Defendant Officers place their knees on decedent's chest and press down with their collective body weight. And contrary to Defendant's flip dismissal, a war of the experts will undoubtedly occur because decedent's demise appears to present a classic positional asphyxia situation which law enforcement has long been trained on how to avoid.

[2] Plaintiffs acknowledge that as Decedent Jaramillo's siblings and niece the Ninth Circuit has found that they do not have a constitutionally protected interest in their brother's companionship under 42 U.S.C. §1983 as alleged in their sixth cause of action. See *Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1992).

filed herewith and all exhibits attached thereto, on the court's file in this matter, and on such oral and/or documentary evidence presented at the hearing of this motion.

## STATEMENT OF FACTS

On July 7, 2013, Plaintiff, Ana Biocini, retired to her bedroom located at 2365 E. 21st Street in Oakland, CA at approximately 10 p.m. (See Deposition Testimony of Ana Biocini at 94:10-95:14, attached to the Lacy Declaration as Exhibit A, hereinafter cited as "Biocini Depo"). Early the next morning, on July 8, 2013, at 1:40 a.m., Ms. Biocini awoke to loud noises and shouting coming from her brother, Hernan Jaramillo's, bedroom directly adjacent to Ms. Biocini's bedroom. (Biocini Depo 30:12-25; 94:10-95:14.) Ms. Biocini was frightened by the noises and shouting and assumed someone had broken in the house and was attacking her brother, Hernan Jaramillo (hereinafter "Mr. Jaramillo" or "Decedent"). (Biocini Depo 31:1-19; 33:5-12; 33:13-20; 96:5-14; 97: 4-14; 97:23-98:8). Ms. Biocini was too frightened to investigate the noises herself and called 911 for assistance. (Biocini Depo 96:18-25; 99:22-100:6). She told the 911 dispatcher that she believed someone had broken into her and was attacking her brother in the adjacent room because she heard loud noises and shouting. (Biocini Depo 32:15-21; 32:22-33:4; 102:19-105:6).

Thereafter Ms. Biocini waited in her bedroom for the arrival of local law enforcement. (Biocini Depo 33:21-34:3). Officer Carlos Navarro (hereinafter "Navarro") heard the corresponding "low level" call for service noting a disturbance of the peace. (See Deposition Testimony of Carlos Navarro at 22:24-23:25, attached to the Lacy Declaration as Exhibit B, hereinafter cited as "Navarro Depo"). Navarro responded to the call in his patrol car without activating his patrol car's emergency lights and after stopping at all traffic lights. (Navarro Depo 24:7-20). Navarro heard Biocini call for help from her bedroom window on the side of her house. (Navarro Depo 26:14-27:10). Defendant officer Ira Anderson (hereinafter "Anderson") arrived shortly afterwards. (See Deposition Testimony of Ira Anderson at 47:16-48:24, 49:24-50-21, attached to the Lacy Declaration as Exhibit C, hereinafter cited as "Anderson Depo"). Ms. Biocini remained locked in her bedroom out of fear she would be attacked by the perceived intruder. (Biocini Depo 100:15-20). Ms. Biocini handed the Defendant officers the keys to her home through her bedroom window. (Biocini Depo 101:5-14; Navarro Depo 35:25-36:4; Anderson Depo 59:10-24). Thereafter Navarro and Anderson proceeded

to enter Ms. Biocini's home through the front door and announced their presence as Oakland Police officers. (Navarro Depo 40:2-19). After announcing themselves again, the defendant officers noticed Ms. Biocini open her bedroom door and stand in the doorway at the end of a small hallway. (Biocini Depo 34:15-21, 106:10-107:8; Anderson Depo 64:2-11). Ms. Biocini explained that she heard the noise coming from her brother's adjacent bedroom. (Biocini Depo 105:16-22; Navarro Depo 45:10-25). Anderson then asked Ms. Biocini to take a step back into her room. (Biocini Depo 34:22-35:21, 106:10-107:8).

The Defendant officers then proceeded knock on the door Ms. Biocini had indicated was her brother's bedroom and announce themselves as police. (Biocini Depo 35:22-36:3,106:6-9). Mr. Jaramillo answered the knock by saying, "In a minute" twice before cracking the door open slowly. (Biocini Depo 36:4-37:6, 110:19-111:4; Navarro Depo 48:3-16; Anderson Depo 67:12-68:15). The Defendant officers insisted that Mr. Jaramillo immediately exit his room to speak with the officers. (Navarro Depo 51:8-53:8; Anderson Depo 76:12-77:16). Ms. Biocini began to converse with the Mr. Jaramillo asking if he was okay, ostensibly identifying him as her brother and a resident of the home. (Biocini Depo 36:4-37:6, 109:13-24). Nevertheless, Defendants Navarro and Anderson continued in removing Mr. Jaramillo from his room, handcuffing him in the narrow hallway, and forcing him out of his home. (Biocini Depo 111:5-113:19, Navarro Depo 54:20-55:14, Anderson Depo 79:22-80:21, 82:25-83:7, 86:2-12). All the while, Ms. Biocini implored the Defendant officers to stop, insisting that her brother was not the perceived intruder. (Biocini Depo 110:14-18).

Outside of the home, neighbors had gathered because of the commotion. (See Deposition Testimony of Abel Medina at 14:3-15:2, attached to the Lacy Declaration as Exhibit D, hereinafter cited as "Medina Depo"). Officer Stephen Stout, who had arrived on the scene minutes earlier spoke to Ms. Biocini and Abel Medina (hereinafter "Medina"), the rear neighbor, and both identified the Mr. Jaramillo as a resident of the home and not a threat. (Medina Depo 16:2-12; see also Deposition Testimony of Stephen Stout at 58:12-60:5, attached to the Lacy Declaration as Exhibit E, hereinafter cited as "Stout Depo"). Stout then communicated the information to Defendant Navarro and Anderson. (Stout Depo 60:6-21). Nevertheless, Navarro and Anderson insisted that Mr. Jaramillo sit inside the patrol car. (Navarro Depo 64:10-20; Anderson Depo 93:13-21). Navarro told Mr.

Jaramillo that he was not under arrest but continued to insist that he sit inside the patrol car. (Lacy Decl., Ex. F; Biocini Depo 40:21-41:8). Thereafter Mr. Jaramillo asked the defendant officers if they could talk outside the car or inside his house. *Id*. However, defendant officers Navarro and Anderson declined his request, then forcefully attempted to put Mr. Jaramillo in a patrol car. (Biocini Depo 37:13-15, 117:8-118:11; Anderson Depo 93:8-12; Medina 16:24-17:11). Consequently, Mr. Jaramillo struggled and was thrown on the ground by Navarro and Anderson. (Biocini Depo 37:13-15, 120:2-9; Medina Depo 17:12-18:2).

Ms. Biocini watched the defendant officers drag her brother to the sidewalk. (Biocini Depo 120:25-121:2). Then, defendants Navarro and Anderson used their collective weight to pin Mr. Jaramillo to the ground while defendant Stout pressed his knee into Mr. Jaramillo's back. (Biocini Depo 126:16-128:16, 129:14-131:2, 134:4-135:19; Medina Depo 16:13-23; see also Deposition Testimony of Justin James at 17:1-14; 18:3-19:8, attached to the Lacy Declaration as Exhibit G, hereinafter cited as "James Depo"). Mr. Jaramillo screamed out for help and strained to breathe under the collective weight of the three Defendant officers. (Biocini Depo 37:18-22, 131:4-25; Medina Depo 18:16-24, 19:5-20:1; James Depo 18:8-21). Mr. Jaramillo pleaded with the officers that if they did not let him breathe he would "die". (Lacy Decl., Ex. F). Mr. Jaramillo then attempted to call out to Ms. Biocini to save him. (Biocini Depo 133:14-24; Medina 18:16-24). Suddenly, Mr. Jaramillo became unresponsive. (Biocini Depo 39:6-14). The defendant officers flipped Mr. Jaramillo over. (Biocini Depo 38:18-39:5). Mr. Jaramillo was visibly limp, and seemingly lifeless. *Id*. Mr. Jaramillo's face was covered in blood and his head dropped back loudly striking the pavement. (Biocini Depo 38:14-39:5, 121:5-123:13). After approximately 15 minutes had lapsed, police began to perform CPR on Mr. Jaramillo. (Lacy Decl., Ex. F). An ambulance was called. A later discovered medical report by the paramedics reveals the medical response team found Mr. Jaramillo unresponsive, in a prone position, hand cuffed, with vomit in his airway. (Lacy Decl., Ex. H). The EMTs attempted to defibrillate Mr. Jaramillo to no avail. (Lacy Decl., Ex. F). Mr. Jaramillo was taken to Highland Hospital where he was pronounced dead. Mr. Jaramillo leaves behind a large family including his seven siblings and his young niece.

## A. LEGAL STANDARDS

### 1. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense-or the part of each claim or defense-on which summary judgment is sought." It further provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are those that may affect the outcome of the case. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id*. (citing Fed.R.Civ.P., Rule 56(e)). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

In resolving a motion for summary judgment, the evidence of the opposing party is to be believed. See *Anderson*, 477 U.S. at 255. Moreover, all reasonable inferences that may be drawn from the facts placed before the court must be viewed in a light most favorable to the opposing party. See *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the nonmoving party." *Freeman v. Arpaio*, 125 F.3d 723, 735 (9th Cir. 1997). see also *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) ("[T]his court has often held that in police misconduct cases, summary judgment should only be granted 'sparingly' because such cases often turn on credibility determinations by a jury."). Here, Defendants improperly rely on the interpretations of and inferences drawn from the

evidence that favor their theory of the case and that impermissibly require unfettered belief in the Defendant Officers' testimony in asserting that they are entitled to summary judgment.

### 2. Leave to File an Amended Complaint

As a threshold issue, Defendants insinuate that Plaintiffs failed to file their first amended complaint. On June 9, 2015, the parties stipulated that Plaintiffs could file a first amended complaint to name Defendant City of Oakland police officers: Carlos Navarro, Ira Anderson, and Steven Stout. (Document 30.) The parties attached the first amended complaint to the joint stipulation. (Document 30-1.) On June 11, 2015, this Court granted leave to amend the complaint acknowledging the first amended complaint was submitted with the parties' stipulation. (Document 31.) As such, Plaintiffs have effectively filed their first amended complaint and apprised this Court and Defendants of their allegations.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). In addition, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts. *Id.,* at 1130. Accordingly, leave to amend is denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### B. THE DEFENDANT OFFICERS WRONGFULLY DETAINED DECEDENT JARAMILLO

Defendants argue that the Defendant Officers' decisions to detain Decedent Jaramillo were reasonable. In so arguing, Defendants impermissibly conflate two distinct detentions into a single action. Defendants' detention-related argument is entirely focused on the propriety of the Defendant Officers' initial detention of decedent; and they essentially ignore the issue of whether decedent's continued detention was independently lawful. Plaintiffs maintain that the Defendant Officers unlawfully detained decedent when they encountered him inside his home by handcuffing and forcibly removing him from the home. And even if the Defendant Officers' initial detention of

decedent was lawful, forcing decedent to sit in the patrol car and ultimately causing him to die in their effort to detain him was unreasonable.

### 1. The Initial Detention was Unlawful

The propriety of decedent's detention is resolved under the objective standard of *Terry v. Ohio*, 392 U.S. 1 (1968) ("*Terry*"), and its progeny, since the Ninth Circuit has determined that a *Terry* stop can occur at a person's residence. *United States v. Crapser*, 472 F.3d 1141, 1148 (9th Cir. 2007) ("[W]e now hold that when a suspect voluntarily opens the door of his residence in response to a non-coercive 'knock and talk' request, the police may temporarily seize the suspect outside the home (or at the threshold) provided that they have reasonable suspicion of criminal activity.").

Here, there is no dispute over the Defendant Officer's warrantless entry into decedent's home as Plaintiff Biocini gave the officers her keys so they could enter the home, except to say that Defendants overstate the character of the 911 call. Her call was characterized as a low-level disturbing the peace call and the officers did not activate their lights or sirens in responding to the call. Once the Defendant Officers entered Plaintiff's home, it was clear that none of the emergency circumstances that Plaintiff Biocini described in her 911 call were present. There was no sign of an intruder or third-party assailant. There was no yelling or arguing or sounds of a struggle and no over-turned furniture or other visible indications of a struggle. Decedent responded and spoke cogently and intelligibly to the Defendant Officers when they knocked on his door. Moreover, when Decedent Jaramillo opened his bedroom door, he was clearly alone, he had no visible injuries, and his room showed no signs of a violent struggle. Indeed, there was no evidence corroborating or substantiating Plaintiff Biocini's fears. Defendants impugn Plaintiff for failing to say aloud that she placed her 911 call under a misapprehension; however, the circumstances the Defendant Officers observed should have made this realization obvious to them and should have ended the detention. Cf. *Robinson v. City of San Diego*, 954 F.Supp.2d 1010, 1021 (2013) (holding that when a mistake creates the reasonable suspicion, when the officer realize their mistake further investigation was both unnecessary and unwarranted). Moreover, as the Defendant Officers forcibly removed decedent from the home, Plaintiff Biocini spoke to her brother, asked him if he was okay and explained that she called the

police because she heard some noises. This is clearly not a concern she would be showing her unknown assailant.

Under *Terry* and its progeny, the Fourth Amendment allows a police officer to conduct a brief, investigatory seizure only so long as the officer has a reasonable, articulable suspicion that justifies his actions. *Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002). Accepting Plaintiffs' version of the facts as true, Plaintiffs have created a triable issue of fact as to whether the Defendant Officers had sufficient reasonable suspicion of criminal activity on Decedent Jaramillo's part to support their decision to even initially detain decedent by handcuffing and forcibly removing him from his bedroom and out of his home.

## 2. The Continued Detention Was Also Unlawful

However, even if decedent's detention was initially proper under *Terry*, the issue remains whether the length and intrusiveness of the detention were sufficiently excessive so as to violate his constitutional rights as being a de facto arrest without probable cause. In general, the investigative methods used during a *Terry* stop must be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time, *Florida v. Royer*, 460 U.S. 491, 500 (1983); *United States v. Ricardo D.*, 912 F.2d 337, 340 (9th Cir. 1990), and an arrest may occur, requiring probable cause, if a *Terry* stop proceeds beyond its limited purpose. *United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001). While a *Terry* seizure cannot continue for an excessive period of time and it cannot resemble a traditional arrest, *Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County*, 542 U.S. 177, 185–86 (2004), there is no litmus paper test to determine when a proper investigatory detention pursuant to *Terry* has been transformed into an arrest requiring probable cause. *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). The difference is one of degree and is dependent upon a fact specific inquiry that considers the "totality of the circumstances," which includes such factors as the intrusiveness of the stop, e.g., the aggressiveness of the Defendant Officers' methods and how much decedent's liberty was restricted, and the justification for the use of such tactics, i.e., whether the defendant officers had sufficient basis to fear for their safety to warrant the intrusiveness of the action taken.

In addition, although an emergency situation may justify a warrantless seizure in a home (*Payton v. New York*, 445 U.S. 573, 587–88 (1980)), "a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.'" *Mincey v. Arizona*, 437 U.S. 385, 392-93 (1978) (citing *Terry*, 392 U.S. at 25–26). Here, viewed in its totality and in the Plaintiffs' favor, the evidence supports a determination that decedent's constitutional rights were violated by the Defendant Officers because the scope of the search was not strictly circumscribed by the initial exigency (i.e., Plaintiff Biocini's report that there was an intruder assaulting her brother in his room and the Defendant Officers' discovery that there was no such assailant or assault going on), and he was detained beyond the time necessary for Defendant Officers to confirm that he was not the suspect in the 911 call.

It is well established that in determining when a detention is too long in duration to remain valid under *Terry*, it is necessary to determine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985); accord, *Center for Bio–Ethical Reform, Inc. v. Los Angeles County Sheriff Dept.*, 533 F.3d 780, 795 (9th Cir. 2008) ("Once the sheriffs validly initiated an investigative stop, no rigid time constraints governed its duration, so long as the sheriffs acted diligently and pursued a means of investigation likely to confirm or dispel their suspicions quickly.") Here, Decedent Jaramillo was detained for at least 25 minutes and the Defendant Officers knew decedent was not the assailant subject of the 911 call for the majority of this period of time. The second determinative factor is the manner in which decedent was detained, which was handcuffed and forced to sit in the back of a patrol car. Plaintiffs' acknowledge that the mere fact that the Defendant Officers required decedent to be both handcuffed and placed in a patrol car does not necessarily mean that he was subjected to a de facto arrest. *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1077 (9th Cir. 2003) ("A brief, although complete, restriction of liberty, such as handcuffing, during a *Terry* stop is not a de facto arrest, if not excessive under the circumstances.... Likewise, placing a person in a patrol car is not necessarily an arrest [,]") However, "handcuffing substantially aggravates the intrusiveness of a detention," and the use of handcuffs must be "justified by the totality of the circumstances." *Meredith v. Erath*, 342 F.3d 1057,

1062-63 (9h Cir. 2003) (internal quotation marks omitted). This type of an intrusive detention combined with a lengthy *Terry* detention does elevate the character of the detention. *United States v. Torres–Sanchez*, 83 F.3d 1123, 1127 (9th Cir. 1996) (noting that detention in a patrol car exceeds permissible *Terry* limits absent some reasonable justification).

### 3. The Defendant Officers did not have Probable Cause to Arrest Decedent

Defendants argue that the officers had probable cause to investigate whether Decedent Jaramillo needed to be placed on an involuntary mental health hold pursuant to California Welfare and Institutions Code § 5150. This argument is disingenuous because at the time of the incident the Defendant Officers did not follow any of Defendant City's procedures and protocols for instituting a section 5150 hold.[3] The Defendant Officers likely did not endeavor to investigation a section 5150 hold because decedent was cogent and not harming himself. Importantly, the Defendant Officers behaved unreasonably to this end in any event, because they did not respond to decedent with the sound police practices that are proscribed for handling mentally ill suspects. *Deorle v. Rutherford*, 272 F.3d 1272, 1282-83 (9th Cir. 2001) (opining that law enforcement must take care in their tactics when dealing with a mentally ill individual, as increasing the use of force may exacerbate the situation). It is undisputed that by the time the Defendant Officers attempted to force Decedent Jaramillo into the patrol car, they knew that he was Plaintiff Biocini's brother and not the assailant subject of the 911 call. Decedent was not harmed and there was no indication of wrongdoing by him or anyone else. In short, there was no basis for the level of intrusiveness of the detention, and forcing decedent into the patrol car with, what proved to be, deadly force certainly changed the character of the detention in an unlawful arrest.

---

[3] See Defendant City Departmental General Order regarding mentally disordered persons which sets forth the policy and procedures regarding detention and arrests of mentally disordered persons attached to the Lacy Declaration as Exhibit I (requiring for example, Section 5A "members who observe non-violent mentally disordered persons shall not take them into custody unless that person is a danger to themselves or others if such persons can identify themselves and their residences, members shall take them home if their distances are minimal;" and Section 3B members shall not transport a violent  mental disordered person in a police vehicle without first getting permission from a supervisor or command officer"); see also, Navarro Depo at 95:6-96:17.

## C. THE DEFENDANT OFFICERS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Relying on a version of the subject incident that favors them, Defendants assert that the Defendant Officers are entitled to qualified immunity for their reasonable decisions in detaining Decedent Jaramillo. The doctrine of qualified immunity protects a government official from liability for civil damages except where the official violates a constitutional right that "'was "clearly established" at the time of the challenged conduct.'" *Wood v. Moss*, —— U.S. ——, 134 S.Ct. 2056, 188 L.Ed.2d 1039 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. ——, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)). The qualified immunity inquiry has two prongs: (1) whether the officer's conduct violated a constitutional right and (2) whether "the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in the situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)). The court has discretion to consider the two factors in either order. See *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). At summary judgment, resolution of the qualified immunity defense turns whether the undisputed facts and the inferences to be drawn therefrom, viewed in the light most favorable to the non-moving party, show a violation of clearly established federal constitutional rights. See *Tolan v. Cotton*, —— U.S. ——, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014). In cases alleging unreasonable searches or seizures, courts should define the "clearly established" right at issue on the basis of the "specific context of the case." *Saucier, supra*, at 201. Accordingly, courts must take care not to define a case's "context" in a manner that imports genuinely disputed factual propositions. See *Brosseau v. Hagen*, 534 U.S. 194, 195, 198 (2004) (inquiring as to whether conduct violated clearly established law "'in light of the specific context of the case'" and construing "facts ... in a light most favorable to" the nonmovant).

The second prong of the qualified immunity analysis requires the court to decide whether it would have been clear to a reasonable officer in the Defendant Officers' position that their use of deadly force was unlawful in the situation they faced. The question of whether a defendant is entitled to qualified immunity is a question of law for the court. *Torres*, 548 F.3d at 1210. However, the court only resolves that question of law if all material facts are undisputed and, taken in the light most

favorable to the plaintiff, the facts show the defendant did not violate clearly established federal constitutional rights. *Id*.

Here, the Defendant Officers are not entitled to qualified immunity on the wrongful detention issue because a reasonable officer would have known from the clearly established Supreme Court and Ninth Circuit case law that it was unlawful to detain Decedent Jaramillo by forcibly removing him from his home, handcuffing him, and forcing him into the back of a patrol car, all while it was reasonably obvious that he was not the subject of the 911 call and was not a threat to the officer's safety. *See Center for Bio–Ethical Reform, Inc.,* 533 F.3d 794 (affirming a denial of qualified immunity for an unreasonably lengthy *Terry* detention, the court noted that "[t]he deputies' constitutional duty to act diligently and pursue a means of investigation likely to confirm or dispel their suspicions quickly was clearly established on the date of the detention in this case [*i.e.* March 23, 2003]"); *Washington v. Lambert,* 98 F.3d at 1192 (concluding that the law was clearly established in June of 1991 that officers, in making a *Terry* stop, could not use highly intrusive measures such as handcuffing and placement in a patrol car for a significant period of time if the circumstances did not reasonably justify such extraordinary measures in order to ensure the officers' safety); *Marlowe v. Pinal County*, 2008 WL 4264724, at *7 (D. Ariz. 2008) (holding deputies not entitled to qualified immunity for having suspect handcuffed and in back of patrol car 26 minutes after being informed that the defendant was not the subject of the 911 call).

As such, Defendants' argument on this point must fail.

**D. THE DEFENDANT OFFICERS ACTED WITH RACIAL ANIMUS**

Defendants argue that Plaintiffs cannot sustain their federal conspiracy or California civil code section 51.7 claims because there is no evidence that the Defendant Officers acted with racial animus toward decedent Jaramillo. Defendants are mistaken.

California Civil Code section 51.7, the Ralph Act, provides that "[a]ll persons within [California] have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property" because of race. Cal. Civ.Code §§ 51.7(a), 51(b). In order to establish a section 51.7 claim, a plaintiff must show "(1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of

plaintiff's race; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm." *Knapps v. City of Oakland*, 647 F.Supp.2d 1129, 1167 (N.D. Cal. 2009) (citation omitted).

Here, the Defendant officers were informed that they needed to respond to the scene with a Spanish speaking officer, had information that previous emergency calls had been made from the residence, and responded commensurate to low-level characterization assigned to the call. However, when decedent was reluctant to get in the patrol car, the Defendant Officers pressed the issue beyond what was necessary or warranted clearly out of a racial motivation and certainly not a legitimate law enforcement objective. As espoused by Defendants, the Defendant Officers were on scene to save Decedent Jaramillo's life not jeopardize it further.

**E. PLAINTIFFS SEEK LEAVE TO AMEND THE COMPLAINT TO ALLEGE THE NEWLY DISCOVERED CLAIM THAT DECEDENT WAS DENIED REASONABLE POST-ARREST MEDICAL CARE**

Through the course of discovery upon close inspection of the thousands of pages of documents Defendants produced, Plaintiffs learned that when the paramedics contacted Decedent Jaramillo, he had vomit in his trachea. (See Paramedics Report attached to the Lacy Declaration as Exhibit H.) From this evidence it is likely that decedent choked to death on his own vomit or certainly that this choking contributed to the asphyxiation he suffered while being smothered by the Defendant Officers. The Paramedic Report also indicates that decedent was in a prone position when they encountered him. (Exhibit H.) Viewed in the light most favorable to Plaintiffs, this evidence suggests that the Defendant Officers, who were the only people near decedent after they arrested him, allowed decedent to vomit and then choke on his own vomit while having him pinned to the ground on his back, exacerbating his vulnerable position and contributing to his death.

Claims for the denial of medical assistance are analyzed under the Fourth Amendment. *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006). The Fourth Amendment requires law enforcement officers to provide objectively reasonable post-arrest care to an apprehended individual. *Id.* (the Fourth Amendment does not require an officer to provide what hindsight reveals to be the most effective medical care for an arrested suspect.) Here, it was unreasonable for the Defendant Officers to not prevent decedent from choking on his own vomit.

While the Ninth Circuit has not prescribed the precise contours of what constitutes objectively reasonable post-arrest care, and it has made clear that "a police officer who promptly summons... necessary medical assistance has acted reasonably for purposes of the Fourth Amendment," *Id.*; see *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 245 (1983) ("Whatever the standard may be, [the defendant] fulfilled its constitutional obligation by seeing that [the apprehended individual] was taken promptly to the hospital that provided the treatment necessary for his injury."). These standards have been applied to situations requiring CPR, applying pressure to gunshot wounds and other life saving measures. Here, commonsense—not particularized medical or emergency response training was required—was needed to render aid to decedent. The Defendant Officers could have prevented decedent from choking by simply placing him on his side while the paramedics were en route. As such, Plaintiffs have a colorable argument for unreasonable denial of medical care.

In determining whether leave to amend is appropriate, this Court considers the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility. *Owens v. Kaiser Foundation Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir. 2001). There is no bad faith or undue delay because Plaintiffs were only recently apprised of this medical information on the eve of discovery cutoff date because it was buried deep within Defendants' massive-discovery dump on Plaintiffs. This aspect of decedent's condition was not noted by the medical examiner in the autopsy report. And there is no prejudice to Defendants as they were singularly in possession of this information concerning decedent's condition. As such, this Court should grant Plaintiffs leave to amend the complaint to add a claim for denial of reasonable post-arrest medical care.

## F. PLAINTIFFS PROPERLY ALLEGE A *MONELL* CLAIM

Defendants claim that no evidence supports Plaintiffs' *Monell* claims against Defendants City, specifically that no evidence supports the improper training and ratification theories. Plaintiffs assert the evidence proves per se violations of *Monell*, and at the very least reveals material factual disputes that preclude summary judgment in favor of Defendants.

Pursuant to 42 U.S.C. § 1983, municipalities are liable for injuries that arise from an official policy or custom that causes constitutional deprivations. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Plaintiffs must show that they: "(1) possessed a constitutional right of

which they were deprived; (2) that the City had a policy; (3) that the policy 'amounts to deliberate indifference' to their constitutional rights; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)). The failure to train or supervise may give rise to a "policy or custom" sufficient to impose liability on these Defendants. *City of Canton*, 489 U.S. at 389- 90.

A municipality's failure to train its employees may create Section 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton*, 489 U.S. at 388; *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006). Plaintiffs maintain that the Defendant Officers dogged determination to respond to the Plaintiff's description in her 911 call rather than the factors they observed with their own eyes upon entering Plaintiff's home and ultimately using deadly force on Decedent Jaramillo for absolutely no reason evinces inadequate training on how to appropriately utilize force and respond to the public's call for help. In addition, the manner in which the Defendant Officers used force on decedent literally pressing the life out of him as he informed them that he couldn't breathe, and allowing him to aspirate his own vomit while in prone position also evinces Defendant City's failure to properly train its officers on basic asphyxia safety.

Defendants' argument on this point must fail.

## G. PLAINTIFFS PROPERLY ALLEGE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Defendants argue that both of Plaintiffs' state law emotional distress claims must be dismissed. Plaintiffs acknowledge that the California Code of Civil Procedure § 377.34 provides that when an action is brought by a decedent's successor in interest, "the damages recoverable...do not include damages for pain, suffering, or disfigurement." *Id*. § 377.34 (emphasis added), and that the Ninth Circuit has held that where the estate of a decedent brings tort claims under state law for the intentional and negligent infliction of emotional distress of the decedent, § 377.34 "clearly precludes

recovery of emotional distress damages." *Martin v. Cal. Dept. of Veterans Affairs*, 560 F.3d 1042, 1050–51 (9th Cir. 2009). However, Plaintiff Biocini, personally brings a claim for NIED.

"[NIED] is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." *Huggins v. Longs Drug Stores Calif., Inc*., 6 Cal.4th 124, 129 (1993). NIED cases fall into two categories: bystander and direct victim. *Id*., at 129–130. In "'[b]ystander' cases ... the plaintiff [is] not physically impacted or injured, but instead witnesse[s] someone else being injured due to defendant's negligence." *Wooden v. Raveling*, 61 Cal.App.4th 1035, 1037 (1998). From the inception of this cause of action, the California Supreme court identified that the following factors need to be considered to assess foreseeability: "(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *Dillon v. Legg*, 68 Cal.2d 728, 740–741 (1968). Absent exceptional circumstances, recovery should be limited to relatives residing in the same household, or parents, siblings, children, and grandparents of the victim." *Thing v. La Chusa*, 48 Cal.3d 644, 668, fn. 10 (1989).

Plaintiffs seek leave to amend the complaint to correct the omission that the NIED is brought by the Estate (albeit incorrectly) and Plaintiff Biocini. See *Lopez v. Smith, supra,* 203 F.3d at 1127 ("the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities"). Here again, Defendants are not prejudiced by amending the complaint to name the proper Plaintiff for the fourteenth cause of action because, the original complaint expressly alleges the factual basis for her claim, e.g. that Plaintiff Biocini observed the officers drag decedent out of the house as she implored them to stop and that he was her brother; that decedent called out for her to save him as he lost consciousness, and that she observed the beating and her brother die at the hands of the Defendant Officers. (Document 1 at ¶¶ 19-23.)

## **CONCLUSION**

This case is fraught with material questions of fact; including whether the Defendant Officers unlawful detained Decedent Jaramillo initially by handcuffing and dragging him out of his home when they knew he was not the subject of the 911 call, and whether the detention morphed into an unlawful arrest by subjecting him to deadly force in their attempt to force him into a patrol car. The remainder of Defendants attacks are on pleading technicalities and can easily be cured by amending the complaint. Moreover, Plaintiffs only recently discovered evidence that Defendants have been privy to throughout the entire litigation which gives rise to a claim for unreasonable denial of medical attention. In order to grant Defendants' motion, this Court has to make factual determinations in favor of defendants which is not proper on summary judgment. In light of the foregoing, this Court should deny Defendants' motion for summary judgment and grant Plaintiffs' motion to amend the complaint as requested and for any deficiencies as this Court ascribes.

**Dated: November 30, 2015**              **LAW OFFICES OF JOHN L. BURRIS**


                                          _/s/ DeWitt M. Lacy_____
                                          DeWITT M. LACY, Esq.
                                          Attorney for Plaintiffs
                                          ANA BIOCINI, et al